IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

JEFFREY RUSS                                                    PLAINTIFF

VERSUS                              CIVIL ACTION NO. 2:11cv195-KS-MTP

SAFECO INSURANCE COMPANY OF
AMERICA, MEMBER OF LIBERTY MUTUAL
GROUP; AND DOE DEFENDANTS, INDIVIDUALS
AND/OR CORPORATIONS, 1-10                              DEFENDANTS

And

SAFECO INSURANCE COMPANY OF
AMERICA                                        COUNTER-PLAINTIFF

VERSUS

JEFFREY RUSS AND
WELLS FARGO BANK, N.A.                     COUNTER-DEFENDANTS

## MEMORANDUM OPINION AND ORDER

        This matter is before the Court on Defendant Safeco Insurance Company of

America's Motion for Summary Judgment or in the Alternative for Partial Summary

Judgment ("Motion for Summary Judgment") [124]; Plaintiff Jeffrey Russ's ("Plaintiff" or

"Russ") Motion to Strike Defendant's Experts ("Motion to Strike Experts") [126];

Plaintiff's Motion for Partial Summary Judgment [127];[1] Plaintiff's Motion to Strike

Defendant's Untimely Supplemental Discovery Responses ("Motion to Strike

Discovery") [129]; and Safeco Insurance Company of America's ("Safeco") Motion to

_____

        [1] The Motion to Strike Experts [126] and Motion for Partial Summary Judgment [127]
are actually encompassed within one document styled as "Plaintiff's Motion to Strike
Defendant's Experts and Motion for Partial Summary Judgment".  This one document
was filed twice:  first as a "Motion to Strike" under docket entry number 126, and second
as a "Motion for Partial Summary Judgment" under docket entry number 127.  For
purposes of clarity, the Motion to Strike Experts [126] and Motion for Partial Summary
Judgment [127] will be addressed separately in this opinion and order.

Determine Order of Proof at Trial [132].  Having considered the submissions of the parties, the record, and the applicable law, the Court finds that:

1) Safeco's Motion for Summary Judgment [124] should be granted in part and denied in part;

2) Plaintiff's Motion to Strike Experts [126] should be granted in part and denied in part;

3) Plaintiff's Motion for Partial Summary Judgment [127] should be granted in part and denied in part;

4) Plaintiff's Motion to Strike Discovery [129] should be granted in part and denied in part; and

5) Safeco's Motion to Determine Order of Proof at Trial [132] should be denied.

## **BACKGROUND**

Safeco issued a policy of insurance to Russ, bearing policy number OX5802761 with effective dates of January 9, 2011, through January 9, 2012 (the "Policy").  The Policy was in effect at the time Russ suffered a fire loss on March 15, 2011 at the covered property, which was located at 2651 Ovett Moselle Road in Ovett, Mississippi (the "Covered Property").  Russ reported the fire loss to Safeco on March 16, 2011, around 9:00 a.m.  That same day, he also reported the loss to Wells Fargo Bank, N.A. ("Wells Fargo") the mortgagee for the Covered Property, and to all his utility service providers.  Plaintiff's subsequent dealings with various Safeco representatives prior to filing this suit were thoroughly detailed in the Court's January 1, 2012 Memorandum Opinion and Order [32] and need not be restated here.

On September 26, 2011, Plaintiff filed this action against Safeco, alleging numerous claims for relief based upon Safeco's refusal to provide benefits under the Policy. (*See* Compl. [1].) Plaintiff asserted diversity of citizenship jurisdiction under Title 28 U.S.C. § 1332. On November 8, 2011, Safeco filed its Answer [5], denying that Plaintiff was entitled to any relief and asserting various defenses to coverage, such as Plaintiff's failure to submit to an examination under oath prior to filing suit. Also on November 8, Safeco filed its Motion for Summary Judgment [6], seeking dismissal on the basis of its examination under oath defense. On December 1 and 5, 2011, Safeco's counsel examined the Plaintiff under oath.

On January 1, 2012, the Court denied Safeco's request for summary judgment. (*See* Mem. Op. and Order [32].) After exhaustively examining Plaintiff and Safeco's pre-litigation interactions, the Court found no support for the argument that Russ refused to submit to an examination under oath prior to filing this action.

On January 23, 2012, Safeco moved for leave to amend its answer to assert a counterclaim for declaratory relief and a third-party claim against Wells Fargo. (*See* Mot. to Amend and File Third-Party Claim [35].) On February 23, 2012, the Court granted Safeco's request for leave to file a counterclaim, but denied its request to assert a third-party claim. (*See* Order [42].) On February 29, 2012, Safeco filed its Amended Answer and Counterclaim for Declaratory Relief [43], which primarily requests that the Court declare that no amounts are owed to the Plaintiff under the Policy.

On July 16, 2012, Safeco renewed its request to add Wells Fargo to the litigation. (*See* Mot. for Joinder of Wells Fargo [112].) Safeco contended that circumstances had changed since the Court's February 23, 2012 Order [42], in that a corporate

-3-

representative of Wells Fargo testified at deposition on July 9 that Wells Fargo asserted a claim to Policy proceeds.  The Court granted this joinder request and Safeco subsequently filed its Second Amended Answer and Amended Counterclaim for Declaratory Relief [140], requesting, *inter alia*, that the Court declare that Wells Fargo has no claim to Policy proceeds in light of its foreclosure on the Covered Property. Plaintiff later filed a crossclaim against Wells Fargo, (*see* Doc. No. [170]), asserting numerous claims relating to the foreclosure and the mortgagee/mortgagor relationship between Wells Fargo and himself.  The parties are presently engaged in discovery on Plaintiff and Safeco's claims against Wells Fargo.

Safeco's Motion for Summary Judgment [124] and Motion to Determine Order of Proof at Trial [132], as well as Plaintiff's Motion to Strike Experts [126], Motion for Partial Summary Judgment [127] and Motion to Strike Discovery [129] were all filed on August 6, 2012.  The motions have been fully briefed and the Court is ready to rule.

## DISCUSSION

### I.    Safeco's Motion for Summary Judgment [124]

#### A.    Standard of Review

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). Initially, the movant has "the burden of demonstrating the absence of a genuine issue of material fact."  *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265

(1986)).  If the movant meets this burden, the nonmovant must go beyond the pleadings and point out specific facts showing the existence of a genuine issue for trial.  *Id.*  "'An issue is material if its resolution could affect the outcome of the action.'"  *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)).  "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party."  *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (citation omitted).

The Court is not permitted to make credibility determinations or weigh the evidence.  *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009).  When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party."  *Sierra Club, Inc.*, 627 F.3d at 138.  However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial."  *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).  Summary Judgment is mandatory "'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 766 (5th Cir. 2011) (quoting *Celotex Corp.*, 477 U.S. at 322), *cert. denied*, 132 S. Ct. 2103 (2012).

Safeco first contends that Russ is not owed any proceeds under the Policy pursuant to its examination under oath ("EUO") and concealment-misrepresentation affirmative defenses.  "When a party seeks summary judgment pursuant to an

affirmative defense, such as . . . [Safeco], the movant must establish all of the elements of the defense." *Citigroup, Inc. v. Fed. Ins. Co.*, 649 F.3d 367, 371 (5th Cir. 2011) (citing *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).  Safeco's remaining bases for summary judgment focus on Plaintiff's alleged inability to meet the essential elements of his claims for relief.  "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case."  *Cuadra*, 626 F.3d at 812 (citation and internal quotation marks omitted).

B.    **Analysis**

1.    **EUO Defense**

Safeco asserts that Russ failed to submit to an EUO demanded by Safeco prior to filing suit and that he may not collect any proceeds under the Policy as a result.  This same argument was made in Safeco's November 8, 2011, Motion for Summary Judgment [6].  In ruling on that motion, the Court exhaustively detailed Russ and Safeco's pre-suit interactions and found:

> While it is true that . . . [Russ] filed suit prior to being examined under oath, there is no support for any argument that he refused to submit to such an examination.  The record is replete with instances of Russ' full cooperation with Safeco, and by that of his attorneys.  It is unfortunate that there was such a delay in securing the documents that Safeco deemed it needed in order to perform the examination under oath, but the record reveals that the blame for that could be equally shouldered by all concerned.  That being said, summary judgment is not appropriate in this case.

(Mem. Op. and Order [32] at p. 15.)

Safeco's present request for summary judgment offers nothing justifying a different decision than was reached as to its prior request.  Again, no evidence is

presented showing that Russ refused to submit to an EUO requested by Safeco. The record reveals that Russ's EUO was set to occur on July 20, 2011, but that counsel for Safeco and Russ mutually agreed to continue the EUO until Safeco could obtain certain information it deemed necessary to conduct the EUO. Although there was a significant delay in rescheduling the EUO, the Court does not find Russ to be any more responsible for the delay than Safeco. In any event, there is still no evidence of a "willful refusal to comply with the[ EUO] policy provision[] on the part of the insured." *Mullen v. Miss. Farm Bureau Cas. Ins. Co.*, 98 So. 3d 1082, 1089, 1090 (¶¶ 24, 29) (Miss. Ct. App. 2012) (distinguishing opinions finding coverage to be voided by the failure of insureds to comply with EUO policy provisions, and reversing the trial court's grant of summary judgment in favor of a defendant insurer), *cert. denied*, 98 So. 3d 1073 (Miss. 2012); *see also Cain v. U.S. Fire Ins. Co.*, No. 1:07CV71, 2008 WL 2094235, at *2 (S.D. Miss. May 15, 2008) (denying the defendant insurer's motion for summary judgment based on its EUO affirmative defense where there was no "willful refusal to comply" with a request for an EUO).[2]

Safeco further asserts that its rights and interests have been prejudiced as a result of Russ filing suit prior to submitting to an EUO. Even if prejudice is a relevant consideration with respect to Safeco's EUO defense,[3] the Court fails to discern any

---

[2] The Court applies Mississippi's substantive law in this diversity case involving the interpretation of an insurance policy covering property located in Mississippi. *Cf. Consol. Cos., Inc. v. Lexington Ins. Co.*, 616 F.3d 422, 425-26 (5th Cir. 2010) ("Because this diversity *case* involves 'the interpretation of insurance policies issued in Louisiana for property located in Louisiana,' that state's substantive law controls.") (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007)).

[3] *Compare State Farm Mut. Auto. Ins. Co. v. Commercial Union Ins.* Co., 394 So. 2d 890, 893 (Miss. 1981) ("[U]nless some prejudice is shown by an insured's failure to cooperate with the insurance carrier in its investigation, such failure does not operate to

evidentiary basis for this assertion.  Safeco obtained three (3) recorded statements from Russ prior to the initiation of this action.  (*See* Doc. Nos. [124-3], [124-4], [124-6].)  Those statements may be utilized by Safeco in this lawsuit even though they were not made under oath.  *See* Fed. R. Evid. 801(d)(2)(A) (providing that a statement made by an opposing party is not hearsay).  Also prior to filing suit, Russ executed one or more written authorizations in favor of Safeco so that it could obtain from third parties almost any conceivable document or record relating to his insurance claim.  (*See* Doc. Nos. [6-14 at ECF pp. 4-5], [146-2 at ECF p. 27].)  Finally, Safeco took Russ's EUO on December 1 and 5, 2011, after suit was filed but before the exchange of any formal discovery.  (*See* Doc. No. [43-2].)  Safeco makes no claim that the pendency of the lawsuit impaired its ability to obtain information from Russ during this EUO.  Given the substantial amount of information that Safeco obtained, or had the ability to obtain, from Russ prior to the filing of this action and that Safeco took Russ's EUO without incident in the early stages of this litigation, its prejudice argument is not well taken.

For the foregoing reasons, Safeco's request for summary judgment with respect to its EUO defense will again be denied.

### 2.    Concealment-Misrepresentation Defense

Safeco argues that Russ intentionally concealed and misrepresented facts and circumstances throughout the presentation of his fire loss claim.  The Policy contains the following provisions concerning concealment or fraud by the insured:

---

forfeit the insured's rights under the policy."), *with U.S. Fid. & Guar. Co. v. Wigginton*, 964 F.2d 487, 491 (5th Cir. 1992) ("Wigginton's breach of the examination clause, precluding coverage as a matter of law, obviates any obligation of USF&G to demonstrate prejudice.").

**Concealment or Fraud.**  This policy was issued in reliance upon the information provided on your application.  We may void this policy if you or an ***insured*** have intentionally concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct at the time application was made or any time during the policy period.

We may void this policy or deny coverage for a loss or ***occurrence*** if you or an ***insured*** have intentionally concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.

We may void this policy or deny coverage because of fraud or material misrepresentation even after a loss or ***occurrence***.  This means we will not be liable for any claims or damages which would otherwise be covered.  If we make a payment, we may request that you reimburse us.  If so, you must reimburse us for any payments we may have already made.

(Policy [124-1 at ECF pp. 44-45].)  "In Mississippi, for an insurance company to defeat a policy on the basis of a 'concealment' clause, it must establish that statements by the insured were (1) false *and* (2) material *and* (3) knowingly and wilfully made."  *Clark v. Aetna Cas. & Sur. Co.*, 778 F.2d 242, 245 (5th Cir. 1985) (citation omitted).

Safeco contends that Russ concealed and misrepresented facts and circumstances regarding the following subjects:  his employment, his business interests, his financial circumstances, and his whereabouts at the time of the fire.  The Mississippi Supreme "Court takes a broad view of materiality" with respect to insurance investigations.  *Edmiston v. Schellenger*, 343 So. 2d 465, 466 (Miss. 1977) (citations omitted).  Under that view, information and documents relating to Russ's location at the time of the fire and his business and personal finances are material to Safeco's fire loss investigation.  *See Monticello Ins. Co. v. Mooney*, 733 So. 2d 802, 806 (¶ 17) (Miss. 1999).  Notwithstanding the issue of materiality, genuine issues of material fact exist as to whether Russ knowingly made false statements or concealed information regarding

these subject matters.

As to Plaintiff's location around the time of the fire, his EUO and deposition testimony indicate that he was traveling from Petal to Waynesboro, utilizing Highway 42 and then Highway 63.  Safeco posits that cell phone records show that Plaintiff's cell phone received a call at 5:04 p.m., which was three minutes before the fire was reported, and that the cell phone was within 5 to 6 miles of the Ovett cell phone tower. Safeco further asserts that the Ovett cell phone tower is within close proximity to the Covered Property and that the tower was designed and maintained to prevent it from connecting with a user traveling from Highway 42 to the Highway 63 intersection. Safeco thus contends that Russ misrepresented his location at the time of the fire because he would not have connected with the Ovett tower if, as he claimed, he had been traveling the Highway 42 to Highway 63 route from Petal to Waynesboro. Evidence must be weighed and conflicting facts must be considered for this issue to be resolved.  These are functions of the jury, and not this Court.

In reviewing the summary judgment documentation presented by the parties, the Court also finds that fact issues exist as to the following:  the number of occupations Russ had in March of 2011; whether Russ knowingly misrepresented bank account overdraft information, his ownership interest in Capture Security, LLC ("Capture Security"), his ability to access funds in Capture Security's account at Magnolia State Bank, the amount of funds in that account, and the circumstances surrounding his leaving Capture Security; whether Russ concealed from Safeco the existence of student loan debt; and, whether Russ concealed bank records in his possession or control during the early stages of Safeco's investigation.

-10-

In sum, the existence of jury issues as to essential elements of Safeco's concealment-misrepresentation defense precludes a grant of summary judgment in its favor.

### 3.      Claim for Additional Living Expenses

Plaintiff asserts a claim "for Additional Living Expense under Coverage D" of the Policy.  (Compl. [1] at ¶ 6.)  The portion of the Policy applicable to this claim provides in pertinent part:

> If a loss covered under this Section makes that part of the ***residence premises*** where you reside uninhabitable we cover **Additional Living Expense**, meaning the necessary increase in living expenses you incur so that your household can maintain its normal standard of living.
>
> Payment shall be for the shortest time required, not exceeding 24 months, to repair or replace the damage or to permanently relocate.

(Policy [124-1 at ECF p. 30].)  Safeco seeks summary judgment on the bases that the Plaintiff did not "reside" at the Covered Property at the time of the fire and that he did not "incur" any "increase in living expenses" as a result of the fire.

### a.  Whether Plaintiff Resided at the Covered Property at the Time of the Fire

Safeco contends that prior to the fire, the Plaintiff had permanently moved away from the Covered Property in Ovett, and into the residence of his then-fiancé, Tonda Young,[4] in Waynesboro.  Safeco cites *Korbel v. Lexington Ins. Co.*, 308 Fed. Appx. 800 (5th Cir. 2009), in support of the argument that Plaintiff cannot recover any additional living expenses because he moved in with Ms. Young prior to the fire.  In *Korbel*, the Fifth Circuit affirmed the district court's grant of summary judgment in favor of the defendant insurer as to the insured's claim for additional living expenses because the

---

[4] The Plaintiff subsequently married Tonda Young.

insured never resided at the subject property.  *See* 308 Fed. Appx. at 805-06.  The Fifth Circuit looked "to the generally prevailing meaning of 'reside,' which is defined as 'to dwell permanently or for a considerable time, to have one's settled or usual abode, to live, *in* or *at* a particular place.'"  *Id.* at 805 (quoting Oxford English Dictionary (2d ed. 1989)).  The insured was found to reside "at his parents' house, where he ate, bathed, and usually slept," even though he spent a great deal of time working on the insured premises and intended for it to be his future residence.  *Id.*

Although *Korbel* is persuasive, it is not controlling because Louisiana substantive law applied there and Mississippi substantive law applies here.  The Mississippi Supreme Court, whose holdings this Court is required to follow in diversity actions,[5] has held "[g]enerally, a person may reside in more than one household."  *Aetna Cas. & Sur. Co. v. Williams*, 623 So. 2d 1005, 1009 (Miss. 1993).  In *Aetna*, the court distinguished "domicile", of which a person can only have one, from "residence", which is a more flexible concept.  *Id.*  "The limitations applicable to one's domicile do not apply to one's residence.  For instance, a person may have multiple residences simultaneously."  *Id.* (citations omitted).  Residence means "merely having abode at a particular place which may be one of any number of such places at which one is, at least from time to time, physically present."  *Id.* at 1010 (citation omitted).  The degree to which one is attached to a particular abode determines whether a person resides at that location.  *Id.*  The court ultimately found that a child of divorced parents was a "resident" of both parents' households for purposes of an uninsured motorist policy provision.  *See id.* at 1006.

---

[5] *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 82 L. Ed. 1188 (1938).

The summary judgment evidence in this case shows that on or about March 8, 2011, Plaintiff began moving out of the Covered Property and into the residence of Ms. Young.  (*See* Pl.'s EUO [43-2] 116:14-19; Tonda (Young) Russ ("Mrs. Russ") Dep. [146-6] 19:19-20:7.)  Prior to the fire, Plaintiff intended to "slowly get things moved back and forth" between the Covered Property and Ms. Young's house.  (Pl.'s EUO [43-2] 116:20-117:2.)  As of the date of the fire, March 15, most of Plaintiff's belongings were still at the Covered Property.  (*See* Pl.'s EUO [43-2] 116:14-19; Mrs. Russ Dep. [146-6] 23:2-5; Safeco 30(b)(6) Dep. [146-2] 55:1-10.)  It was Plaintiff's intention for his father to move to the Covered Property on April 1, 2011, and he was going to assist his father with paying the mortgage and erecting a mechanic shop.  (Pl.'s EUO [43-2] 100:21-101:9.) Plaintiff also intended for his minor son to live with his father at the Covered Property at least until the end of the school year.  (*See* Pl.'s EUO [43-2] 114:9-23.)  It is not clear if the Plaintiff planned to move back to the Covered Property at the time he began staying with Ms. Young.  At his EUO, Plaintiff initially stated that he was going to return to the Covered Property on March 21.  (*See* Pl.'s EUO [43-2] 19:21-20:4.) Plaintiff later stated that he did not plan to move back to the Covered Property after his father moved in on April 1.  (*See* Pl.'s EUO [43-2] 116:11-13.)

Viewing the facts and resulting inferences in the light most favorable to the Plaintiff, the Court finds that a jury issue exists as to whether he resided at the Covered Property at the time of the fire.  Although Plaintiff was sleeping at Tonda Young's house by that time, there is sufficient evidence for a reasonable jury to determine that he resided at both her residence and the Covered Property.  *See Williams*, 623 So. 2d at 1009-10.  The jury could infer that but for the subject fire, Plaintiff would have been

-13-

"physically present" at the Covered Property, "at least from time to time," in order to continue moving his belongings and to assist his father with building a mechanic shop. *Id.* at 1010.  The fact that Plaintiff's son was to live at the Covered Property further evidences a significant "degree of . . . attachment to" that abode.  *Id.*  Plaintiff's conflicting EUO statements also preclude the Court from determining as a matter of law whether he initially intended to move back to the Covered Property.  Thus, summary judgment will not be granted on the basis that the Plaintiff failed to reside at the Covered Property at the time of the fire.

### b. Whether Plaintiff Incurred an Increase in Living Expenses Due to the Fire

Even if the Plaintiff is ultimately found to have resided at the Covered Property at the time of the fire, he may not recover additional living expenses ("ALE") under Coverage D of the Policy unless he incurred a "necessary increase in living expenses . . . ."  (Policy [124-1 at ECF p. 30].)  *Cf. Politz v. Nationwide Mut. Fire Ins. Co.*, No. 1:08CV18, 2009 WL 1395440, at *2 (S.D. Miss. May 18, 2009) (granting in part Nationwide's motion in limine, precluding the plaintiffs from introducing evidence of mortgage payments in support of their ALE claim since the payments represented an obligation they assumed before their loss).  Safeco asserts that there is no evidence establishing that the expenses claimed by the Plaintiff were actually incurred by him or that the expenses were an increase over and above his usual living expenses.  Safeco has met its summary judgment charge on this issue since "the burden of production at trial ultimately rests on the nonmovant", Russ, as to his claim for ALE.  *Cuadra*, 626 F.3d at 812.

Plaintiff does not come forward with any "specific facts showing that there is a

genuine issue for trial" in response to Safeco's motion.  *Cannata*, 700 F.3d at 172.

Instead, Plaintiff offers the following argument of counsel:

> Russ did incur an increase in expenses after the fire. It is a ludicrous
> proposition for Safeco to contend that because Russ lived with his girlfriend
> after the fire, he incurred no additional living expenses. At the least, this is a
> question for the jury. Just because his girlfriend paid for some of Russ'
> incurred expenses does not mean that Russ never incurred them. Safeco is
> arguing against the collateral source rule. Here, Russ' girlfriend is the
> collateral source, and the fact that she paid for some of Russ' incurred
> expenses does not relieve Safeco from having to pay damages and fulfill its
> contractual obligations under the insurance policy. Additionally, if they had
> paid Russ for the additional living expenses, he would have had the money
> to pay his mortgage and avoid the foreclosure of his house by Wells Fargo.
> The gross misconduct of Safeco resulted in an avalanche of foreseeable
> injury and damages to their insured Russ. There are clearly enough facts in
> dispute regarding Russ' additional living expenses to defeat Summary
> Judgment.

(Pl.'s Mem. in Supp. of Resp. in Opp. [147] at pp. 18-19.)

Plaintiff's reliance on the collateral source rule is misplaced.  Under this rule, a

"tortfeasor is not entitled to have damages *for which he is liable* reduced by reason of

the fact that the plaintiff has received compensation for his injury by and through a

totally independent source, separate and apart from the defendant tortfeasor."

*Robinson Prop. Group, L.P. v Mitchell*, 7 So. 3d 240, 244 (¶ 12) (Miss. 2009) (emphasis

added; citation omitted).  The issue here is not whether damages on Plaintiff's ALE

claim should be reduced or mitigated, but if, in the first instance, Safeco is liable for any

damages under the terms of the Policy.  Furthermore, Safeco had no duty to pay the

Plaintiff for his mortgage obligations under the ALE portion of the Policy since he

incurred those obligations before the fire loss.  *Cf. Politz*, 2009 WL 1395440, at *2.

In any event, "[t]o defend against a proper summary judgment motion, one may

not rely on mere denial of material facts nor on unsworn allegations in the pleadings or

arguments and assertions in briefs or legal memoranda." *Roberts v. Walthall County Gen. Hosp.*, 96 F. Supp. 2d 559, 561 (S.D. Miss. 2000), *aff'd*, 240 F.3d 1075 (5th Cir. 2000).  Plaintiff's failure to present specific factual evidence showing that he incurred an increase in living expenses as a result of the fire dictates that there is no genuine issue for trial.  Safeco is therefore entitled to summary judgment on Plaintiff's claim for ALE under Coverage D of the Policy.

### 4.   Claims Relating to Foreclosure by Wells Fargo

Safeco seeks summary judgment with respect to any of Plaintiff's claims relating to Safeco's failure to pay the mortgagee, Wells Fargo.  Safeco contends that Plaintiff has no actionable claim pertaining to Wells Fargo's foreclosure on the Covered Property because the foreclosure extinguished Plaintiff's debt and terminated Well Fargo's right to Policy proceeds.  Safeco also argues that Plaintiff lacks standing to assert claims relating to Safeco's failure to pay Wells Fargo because Safeco's coverage obligations as between Wells Fargo and the Plaintiff are separate and distinct.

Plaintiff, Safeco, and Wells Fargo are presently engaged in discovery regarding the effect of the subject foreclosure and Safeco's coverage obligations as to Wells Fargo.  Thus, any ruling on these issues at this time would be premature and Safeco's request for summary judgment will be denied.  Safeco may reurge its request for summary judgment regarding Plaintiff's foreclosure related claims by April 15, 2013, the dispositive motion deadline as to Plaintiff and Safeco's claims against Wells Fargo.

### 5.   Claims of Tortious Interference with Contractual Relations and with Business Relations

Count III of the Complaint [1] asserts a claim of tortious interference with

contractual relations.  Count IV of the complaint asserts a claim of tortious interference with business relations.  Both claims are based on the allegation that Russ's former business partner, Chris McCreary, refused to continue business dealings with Russ after a Safeco representative contacted McCreary "and made Russ out to be a crook." (Pl.'s Mem. in Supp. of Resp. in Opp. [147] at p. 21.)

Actions for tortious interference with contract and with business relations both require proof of the following elements:

> (1) that the acts were intentional and willful; (2) that they were calculated to cause damage to the plaintiffs in their lawful business; (3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) that actual damage and loss resulted.

*AmSouth Bank v. Gupta*, 838 So. 2d 205, 214 (¶ 24) (Miss. 2002) (citation omitted).  A plaintiff alleging interference with contractual relations must also "prove that an enforceable obligation existed between the plaintiff and another party."  *Par Indus., Inc. v. Target Container Co.*, 708 So. 2d 44, 48 (¶ 8) (Miss. 1998) (citing *Merchants & Planters Bank of Raymond v. Williamson*, 691 So. 2d 398, 407 (Miss. 1997)).  No showing has been made of an enforceable obligation, agreement, or contract between Russ and Chris McCreary.  Therefore, Russ's claim for tortious interference with contractual relations fails as a matter of law.  *Cf. Hollywood Cemetery Ass'n v. Bd. of Mayor & Selectmen*, 760 So. 2d 715, 719-20 (¶ 16) (Miss. 2000) (holding that the absence of proof of an enforceable contract negated a claim for interference with contractual rights).

-17-

Russ contends that the following portions of *his* deposition testimony and *his*

affidavit show that Safeco made him "out to be a crook" when it contacted Chris

McCreary:

A    I believe their investigator's tactics and tone portrayed a bad image of me.

Q    But you do agree that Safeco was entitled to ask people identified as witnesses about facts that they knew related to the fire loss and your contents and other surrounding information, don't you?

A    Correct.

Q    And do you have any personal knowledge of the questions that were asked or the tone in which they were asked that suggested a bad picture of you?

A    I'm aware of the questions only in the copy of the recorded statement they provided. I'm not aware of the tone. I'm aware of what Chris said immediately when he called me after speaking with Brett Bernard the first time.

Q    And you have reported that statement as being what?

A    If I remember correctly, he -- the very first thing he said was, is -- that guy made you sound like a crook.

(Pl.'s Dep. [146-5] 77:1-21.)

On July 27, 2011, I met with my attorney and signed the authorization.  We also went over the list of information on the form and I provided all the information I could to assist Safeco in obtaining the requested information including . . . that my former partner cut off all communication with me after Safeco interviewed him and made me sound like a crook, how Safeco's interview with my former partner killed my negotiation to buy the accounts from my former partner, and information on the former business (where financial records were kept, who the registered agent was, addresses used).

(Pl.'s Aff. [146-1] at ¶ 38.)

Safeco submitted an affidavit from Chris McCreary in support of its Motion for

Summary Judgment.  (S*ee* McCreary Aff. [124-7].)  Attached to the affidavit is a copy of

a recorded statement taken of Chris McCreary on April 5, 2011, by Brett Bernard. McCreary's affidavit states that the attached recorded statement "is a true and correct representation of my statement taken on the 5th day of April, 2011 at approximately 11:26 a.m." (McCreary Aff. [124-7] at ¶ 4.)  In reviewing the transcript of the recorded statement, the Court finds that no reasonable jury could conclude that Safeco's investigator, Brett Bernard, made Russ "out to be a crook" in his questioning of McCreary, much less that Bernard's questioning constituted conduct meeting the willfulness and calculation elements of tortious interference with business relations.

Even overlooking this transcript and assuming *arguendo* that Russ's self-serving affidavit and deposition testimony,[6] containing multiple layers of hearsay,[7] create a genuine issue of material fact as to the first three required elements of tortious interference with business relations, there is no proof of "actual damage and loss result[ing]"[8] from Safeco's actions.  Russ "must show (1) a loss, and (2) that defendant's conduct caused the loss" to prove his *prima facie* case for damages.  *MBF Corp. v. Century Bus. Commc'ns, Inc.*, 663 So. 2d 595, 598 (Miss. 1995) (citation omitted).  As to the loss, Mississippi law requires proof of "'actual' damages, which are synonymous with 'compensatory' damages; they are substantial, rather than nominal." *Biglane v.*

---

[6] *See DIRECTV, Inc. v. Budden*, 420 F.3d 521, 531 (5th Cir. 2005) (finding a litigant's attempt to create a fact issue via a conclusory and self-serving affidavit to rest on unsteady ground).

[7] "Neither the district court nor this Court may properly consider hearsay evidence in affidavits and depositions." *Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (citing *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987)).

[8] *AmSouth Bank*, 838 So. 2d at 214 (¶ 24).

*Under the Hill Corp.*, 949 So. 2d 9, 17 (¶ 37) (Miss. 2007) (citing *ACI Chems., Inc. v. Metaplex, Inc.*, 615 So. 2d 1192, 1202 (Miss. 1993)).  The summary judgment record contains conclusory statements and speculative allegations of loss resulting from the termination of Russ and McCreary's business dealings, as opposed to proof of actual damages.  Moreover, McCreary's affidavit provides that he "made the determination to cease business operations with Mr. Russ, and this was in no way based upon Safeco or due to Safeco."  (McCreary Aff. [124-7] at ¶ 15.)  Nothing presented by the Plaintiff in opposition to summary judgment contradicts or undermines McCreary's sworn statement negating causation.  Consequently, Plaintiff cannot meet the fourth required element of tortious interference with business relations and summary judgment is due in favor of Safeco as to this claim.

### 6.    Negligence

The complaint asserts that as "a direct and proximate result of the negligent acts and/or omissions of the Defendants the Plaintiff has suffered injury and has been damaged for which he is entitled to the recovery of money damages."  (Compl. [1] at ¶ 25.)  Safeco argues that Plaintiff's negligence claim fails as a matter of law because "simple negligence is not a separate and independent tort for which the Plaintiff can recover in the context of an insurance claim."  (Safeco's Mem. Brief in Supp. of Mot. for SJ [125] at pp. 20-21.)  Safeco primarily relies on the Mississippi Supreme Court's decision in *Universal Life Insurance Co. v. Veasley*, 610 So. 2d 290 (Miss. 1992), for this position.

In *Veasley*, the court held that simple negligence on the part of an insurer in denying a claim did not allow for the jury to consider punitive damages since such an

award required proof of malice, gross negligence or reckless disregard for the rights of others. *See* 610 So. 2d at 293-94. The court nonetheless held that extra-contractual damages, such as damages for mental anguish and emotional distress, were available pursuant to "the familiar tort law principle that one is liable for the full measure of the reasonably foreseeable consequences of her actions, [and that] it is entirely foreseeable by an insurer that the failure to pay a valid claim through the negligence of its employees should cause some adverse result to the one entitled to payment." *Id.* at 295. Subsequent decisions have precluded the availability of extra-contractual damages "where the insurer can demonstrate an arguable, good-faith basis for denial of a claim." *United Servs. Auto. Ass'n v. Lisanby*, 47 So. 3d 1172, 1178 (¶ 18) (Miss. 2010) (citations and internal quotation marks omitted). Thus, under Mississippi law, an insurer not liable for punitive damages may still be liable for extra-contractual damages if its decision to deny a claim lacks a reasonably arguable basis, but otherwise fails to rise to the level of an independent tort. *Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618, 628 (5th Cir. 2008) (citations omitted).

In response to Safeco's request for summary judgment on his negligence cause of action, Plaintiff does not contend that Safeco lacked an arguable basis for denying his claim.[9] Neither does the Plaintiff set forth the four necessary elements of a negligence claim and point to evidence creating a fact issue as to each element.[10]

---

[9] "[T]he plaintiff bears a heavy burden in demonstrating to the trial court that there was no reasonably arguable basis for denying the claim." *Windmon v. Marshall*, 926 So. 2d 867, 872 (¶ 22) (Miss. 2006) (citing *Blue Cross & Blue Shield v. Campbell*, 466 So. 2d 833, 844 (Miss. 1984)).

[10] *See Ladner v. Holleman*, 90 So. 3d 655, 659 (¶ 13) (Miss. Ct. App. 2012) (listing elements).

Instead, Plaintiff cites to case law recognizing that an insurer's inadequate investigation may create a jury issue as to the existence of bad faith supporting an award of punitive damages,[11] and contends that this case law "clearly allows punitive damages for negligence . . . ."  (Pl.'s Mem. in Supp. of Resp. in Opp. [147] at p. 23.)  The Court finds that through his summary judgment response, Plaintiff has abandoned any stand alone negligence claim for an intermediate award of extra-contractual damages.[12]  Therefore, the Court will consider whether, as the Plaintiff has briefed the issue, Safeco's alleged negligent conduct in investigating his claim supports an award of punitive damages.

In Mississippi, it is well-settled that an insurer has a duty to conduct an adequate and prompt investigation of an insurance claim.  *Murphee v. Fed. Ins. Co.*, 707 So. 2d 523, 531 (Miss. 1997) (citing *Banker's Life & Cas. Co. v. Crenshaw*, 483 So. 2d 254, 276 (Miss. 1984)).  However, "a plaintiff's burden in proving a claim for bad faith refusal goes beyond merely demonstrating that the investigation was negligent."  *Id.*  "'[T]he level of negligence in conducting the investigation must be such that a proper investigation by the insurer would easily adduce evidence showing its defenses to be without merit.'"  *Broussard*, 523 F.3d at 630 (quoting *Sobley v. S. Natural Gas Co.*, 302 F.3d 325, 342 (5th Cir. 2002)).

---

[11] *See, e.g.*, *Broussard*, 523 F.3d 618; *Lewis v. Equity Nat'l Life Ins. Co.*, 637 So. 2d 183 (Miss. 1994).

[12] *See Essinger v. Liberty Mut. Fire Ins. Co.*, 529 F.3d 264, 271 (5th Cir. 2008) (finding that plaintiffs abandoned their claim for tortious breach of contract when their summary judgment response was limited to their bad faith claim); *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (holding that plaintiff's failure to pursue a claim beyond her complaint resulted in abandonment); *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("A party who inadequately briefs an issue is considered to have abandoned the claim.") (citation omitted).

Russ contends that Safeco never interviewed his father, his father's wife, or his fiancé, and that each of these witnesses would have given information favorable to Russ and detrimental to Safeco's defenses.  Russ further alleges that Safeco failed to investigate the identity of, or subsequently interview an individual that placed an anonymous call to Safeco and suggested that Russ intentionally set fire to the house on the Covered Property.  Allegedly, Safeco would have discovered evidence showing its defenses to be improper if it had properly investigated the anonymous caller.

The problem with Russ's contentions is that he never identifies what specific evidence Safeco would have been able to obtain by interviewing his fiancé, his father, and his father's wife, or by following up with the anonymous caller who suggested that Russ is an arsonist.  Safeco's primary coverage defenses are 1) that Russ intentionally set fire to the house on the Covered Property; 2) that Russ failed to submit to an EUO before filing suit; and 3) that Russ concealed and misrepresented material facts during Safeco's investigation.  Russ does not show that any of his witnesses would have told Safeco that Russ was with them at the time of the fire, that the fire resulted from an accident, or that Russ submitted to an EUO prior to filing suit.  Also, no contention is made that any of Russ's witnesses can vouch, or could have vouched[13] for the accuracy of any statement or information provided by Russ that Safeco claims was false or misrepresented.  In sum, Russ has failed to show that further investigation of his witnesses by Safeco would have uncovered evidence showing its coverage defenses "to be without even arguable merit."  *Sobley*, 302 F.3d at 342.  As a result, there is no

---

[13] Plaintiff's father, Fred Russ, passed away after the subject fire, but before suit was filed.

-23-

issue for the jury to consider as to Russ's bad faith-negligent investigation claim and

summary judgment will be granted in favor of Safeco.  *Cf. id.* at 342-43 (reversing the

district court's decision to submit the issue of punitive damages to the jury); *Broussard*,

523 F.3d at 630 (same).

> **7.    Breach of the Duty of Good Faith and Fair Dealing; Gross Negligence; Bad Faith Failure to Adjust and Pay Insurance Claim; Tortious Breach of Contract; and Punitive Damages**

Both parties brief these remaining claims through the prism of whether Safeco

has engaged in bad faith conduct, justifying an award of punitive damages.  Thus, these

claims will stand or fall for summary judgment purposes with the determination of

whether sufficient evidence exists for a jury to consider an award of punitive damages.

The Mississippi Supreme Court has provided the following standard with respect

to a trial court's consideration of punitive damages in the context of a bad faith

insurance claim:

> The issue of punitive damages should not be submitted to the jury unless the trial court determines that there are jury issues with regard to whether:
>
> 1.  The insurer lacked an arguable or legitimate basis for denying the claim, *and*
>
> 2.  The insurer committed a wilful or malicious wrong, or acted with gross and reckless disregard for the insured's rights.

*Jenkins v. Ohio Cas. Ins. Co.*, 794 So. 2d 228, 232-33 (¶ 18) (Miss. 2001) (quoting

*State Farm Mut. Auto. Ins. Co. v. Grimes*, 722 So. 2d 637, 641 (1998)).  Both

considerations are questions of law for the trial judge.  *Id.* at 233.  By statute, punitive

damages are unavailable "if the claimant does not prove by clear and convincing

evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud."  Miss. Code Ann. § 11-1-65(1)(a).

"[A]n arguable basis is a reason 'sufficiently supported by credible evidence as to lead a reasonable insurer to deny the claim . . . .'"  *Sobley*, 302 F.3d at 341 n.1 (quoting *Grimes*, 722 So. 2d at 642).  "There may well be evidence to the contrary."  *Hood v. Sears Roebuck & Co.*, 532 F. Supp. 2d 795, 803 (S.D. Miss. 2005), *aff'd*, *Hood v. Tinta*, 247 Fed. Appx. 531 (5th Cir. 2007).  Even if an exclusion or defense does not ultimately bar coverage, it can still constitute an arguable basis.  *Sobley*, 302 F.3d at 341. Generally, an honest mistake, simple negligence, or ordinary oversight leading to the denial of coverage will not be found to constitute malicious or bad faith conduct allowing for an award of punitive damages.  *See Caldwell v. Alfa Ins. Co.*, 686 So. 2d 1092, 1098 (Miss. 1996).  "The wrong complained of must not be an 'ordinary tort' such as could be 'the produc[t] of forgetfulness, oversight or the like,' but must be more in the nature of [a] 'heightened' tort evincing 'gross, callous or wanton conduct, or . . . accompanied by fraud and deceit.'"  *Life & Cas. Ins. Co. of Tenn. v. Bristow*, 529 So. 2d 620, 622 (Miss. 1988) (quoting *State Farm Fire & Cas. Co. v. Simpson*, 477 So. 2d 242, 250 (Miss. 1985)).

### a.  Whether an Arguable Basis Exists for the Denial of Plaintiff's Claim

Safeco posits that a continuing investigation by an insurer will almost universally constitute an arguable basis for not paying a claim because an insurer has the right and duty to conduct an investigation.  Several authorities recognize an insurer's right to delay payment of a claim pending the completion of its investigation.  *See, e.g.*, *Casey*

*v. Liberty Mut. Ins. Co.*, 308 Fed. Appx. 743, 747 (5th Cir. 2009) (affirming grant of summary judgment as to bad faith claim where the insurer's investigation led to delayed payment); *Tutor v. Ranger Ins. Co.*, 804 F.2d 1395, 1398-99 (5th Cir. 1986) (holding that the jury should not have been allowed to consider punitive damages when the insurer never denied the claim, but only investigated it, determined it to be valid, and disputed its valuation); *Washington v. Am. Heritage Life Ins. Co.*, 500 F. Supp. 2d 610, 617 (N.D. Miss. 2007) ("[A]n insurer's conduct does not amount to gross negligence or an intentional tort as long as the insurer is actively investigating a case."); *Caldwell*, 686 So. 2d at 1097-98 (finding that the insurer's continuing investigation into the existence of other insurance coverage constituted a legitimate reason for delayed payment).  In each of these cases, delayed or partial payment, as opposed to an outright denial of a claim, was at issue.  *See Caldwell*, 686 So. 2d at 1099 ("'[T]he Mississippi Supreme Court has been extremely reluctant to allow punitive damages in cases where the insurer did not deny coverage, but only disputed the amount of the claim or delayed payment.'") (quoting *Tutor*, 804 F.2d at 1399).

Safeco's investigation of Plaintiff's fire loss claim was ongoing when he filed suit on September 26, 2011.  At that time, Safeco had not yet conducted Plaintiff's EUO, which it clearly had a right to do under the Policy.  *See Mooney*, 733 So. 2d at 806 (¶ 17) ("[C]lauses in insurance policies which authorize insurers to conduct examinations under oath are reasonable and valid.") (citations omitted).  Also, Safeco had not yet obtained several documents relevant to the fire loss, such as Plaintiff's cell phone records and certain banking records.  *See id.* ("We have further found that questions and documents relating to the business and personal finances of the insured are

-26-

material to fire investigations."). As noted above, Plaintiff's EUO was scheduled for July 20, 2011, but was continued per the agreement of Plaintiff and Safeco's counsel. It appears that the parties' inability to obtain records relating to the fire loss investigation by July 20 led to the continuation of the EUO. Although some of the delay in taking Plaintiff's EUO and in obtaining certain documents and records can be attributed to Safeco, the Court does not find that Safeco ever abandoned its efforts to conduct the EUO or obtain the records. Furthermore, some delay is attributable to Plaintiff's former counsel and to Plaintiff's decision to obtain new counsel. *Cf. Sansone v. Liberty Mut. Ins. Co.*, No. 3:04CV886, 2006 WL 286779, at *4 (S.D. Miss. Feb. 3, 2006) (considering the insurer and the insured's conduct in determining whether the insurer's delay constituted bad faith). More importantly, Plaintiff's claim had not been denied by Safeco at the time suit was filed. The Court thus concludes that Safeco's ongoing investigation into the fire loss claim constituted a legitimate basis for not paying Plaintiff's claim at that time. *Cf. Jones v. Reynolds*, No. 2:06cv57, 2008 WL 2095679, at *6 (N.D. Miss. May 16, 2008) ("[A]n arson investigation constitutes an arguable reason to delay payment and there is no obligation to complete investigations within a contractual provision time limit if the insurer has a legitimate reason.").

However, the preceding finding does not end the punitive damages inquiry because Safeco has continued to refuse to make any payment under the Policy and has effectively denied Plaintiff's claim through its pleadings in this cause. *Cf. Tutor*, 804 F.2d at 1399 ("We stress that Ranger never denied coverage under the policy, and we would be faced with a different case had Ranger denied coverage based upon Tutor's failure to furnish a proof of loss."). "An insurance carrier's duty to promptly pay a

legitimate claim does not end because a lawsuit has been filed against it for nonpayment." *Gregory v. Cont'l Ins. Co.*, 575 So. 2d 534, 541 (Miss. 1990). An insurer has a continuing duty to evaluate a claim; the duty extends even after a claim is refused and the insured files suit. *Broussard*, 523 F.3d at 629. After the complaint is filed, the insurer should communicate any basis for claim denial to the insured's counsel or specifically raise the defense in its pleadings. *See Gregory*, 575 So. 2d at 541. The "arguable basis" inquiry will then focus on whether sufficient evidence exists for the insurer's stated reasons for denying the claim. *See Sobley v. S. Natural Gas Co.*, 210 F.3d 561, 564 (5th Cir. 2000). "Because of Defendant's continuing duty to investigate a loss, Plaintiffs may not prevent Defendant from introducing evidence outside the claim file even if the evidence came to light in the context of litigation, i.e., the parties may offer any evidence from the entire claim evaluation process pre- and post-suit." *Lebon v. State Farm Fire & Cas. Co.*, No. 1:08cv509, 2010 WL 1064705, at *2 (S.D. Miss. Mar. 18, 2010).

The Court must therefore determine whether an arguable basis exists for Safeco's continued refusal to pay Plaintiff's claim. As previously noted, Safeco's primary defenses to payment under the Policy are 1) that Plaintiff intentionally set fire to the house on the Covered Property; 2) that Plaintiff failed to submit to an EUO before filing suit; and 3) that Plaintiff concealed and misrepresented material facts during Safeco's investigation. The legitimacy of the first and second of these defenses is contested by the Plaintiff via his Motion for Partial Summary Judgment [127]. The Court finds that it need not consider the validity of those defenses in ruling on Safeco's Motion for Summary Judgment [124] because "there is some credible evidence" to support

-28-

Safeco's concealment-misrepresentation defense.  *Hood*, 532 F. Supp. 2d at 803.

In his recorded statement of March 16, 2011, Russ stated that he had two occupations:  "I'm a paramedic and then I also manage a security company."  (Doc. No. [124-4] at p. 3.)  However, at his EUO in December of 2011, Russ provided that he resigned from his employment as a paramedic with a local hospital in December of 2010 "to do security full-time."  (Pl.'s EUO [43-2] 62:4-12.)  During his recorded statement of April 1, 2011, Russ represented that he and Chris McCreary were "co-owners" of Capture Security; that Capture Security had "about $38,000.00 left in the bank"; that he had access to Capture Security's bank account; and that as to any bank account in the past six months, he had only one check "go NSF" in the account he shared with his ex-wife.  (Doc. No. [124-6] at pp. 6, 7, 9.)  Also during his April 1 recorded statement, Russ did not identify the existence of any student loans when asked about any loans other than his mortgage.  (Doc. No. [124-6] at p. 11.)  At his EUO in December of 2011, however, Russ estimated owing approximately $65,000 in student loans.  (Pl.'s EUO [43-2 at ECF p. 238].)  Russ also answered, "Not on paper", in response to the question of whether he had an ownership interest in Capture Security.  (Pl.'s EUO [43-2] 64:7-10.)  Capture Security's banking records also conflict with Russ's April 1 recorded statement.  The account records only list Christopher McCreary and Kimberly McCreary as authorized signatories and no ending monthly balance between December, 2010 and December, 2011, exceeded $2,682.46.  In fact, Capture Security's account had negative balances at the end of March and April of 2011.  Moreover, Russ's banking records show that in the six (6) months prior to April 1, 2011, his joint account with his ex-wife had three (3) NSF charges and ten (10)

overdraft charges, while his personal account had one (1) overdraft charge.  Finally, section I(B)(2) of this opinion details Safeco's dispute with Russ's representations regarding his location at the time of the subject fire.

In denying Safeco's request for summary judgment as to its concealment-misrepresentation defense, the Court found that fact issues exist as to whether the Plaintiff knowingly made false statements or concealed information regarding his employment, his relationship with Capture Security, his financial circumstances, and his whereabouts at the time of the fire.  Those fact issues do not preclude the Court from holding as a matter of law that Safeco had an *arguable* basis to deny Plaintiff's claim.  "The existence of a viable dispute means that both sides had arguable reasons to litigate the issue."  *Hood*, 532 F. Supp. 2d at 803; *see also Broussard*, 523 F.3d at 628 (citing with approval *Dunn v. State Farm Fire & Cas. Co.*, 711 F. Supp. 1362, 1364-65 (N.D. Miss. 1988), in which the defendant insurer's motion for summary judgment was denied because of the existence of fact issues, but plaintiff's claim for punitive damages was rejected "because the facts, although contested, provided the insurer with an arguable basis for denying the plaintiff's claim").  Accordingly, the disputed evidence referenced in the preceding paragraph provided Safeco with an arguable basis for denying Plaintiff's claim under the Policy's concealment clause.

### b.  Whether Safeco Acted with Malice or Gross Negligence

Even if Safeco lacked an arguable basis for denying Plaintiff's claim, punitive damages are unavailable unless Plaintiff can show that Safeco acted "'with malice or gross negligence in disregard of the insured's rights.'"  *Broussard*, 523 F.3d at 628 (quoting *Wigginton*, 964 F.2d at 492).  The following acts or omissions on the part of

insurers are characteristic of the type of conduct that has been found to rise above mere negligence and into the realm of bad fath:  undue delay in taking action on a claim in violation of industry and corporate standards, or statutory mandates; undue delay in paying a claim initially denied because of a clerical error, following discovery of the error; delaying payment on a claim for several months after the insurer admits to owing the claim; leveraging the insured's financial straits while trying to force a settlement; and, withholding payment on a valid claim because the insurer wants to settle all of the insured's claims.  Jeffrey Jackson, *Mississippi Insurance Law and Practice* § 13:5 (2012) (collecting cases).  Conversely, clerical errors, isolated mistakes, delays resulting from full claims investigations, and the initiation of coverage actions will not ordinarily support an award of punitive damages.  *Id.*

Plaintiff essentially contends that Safeco is guilty of bad faith because it failed to conduct a reasonably prompt investigation of all relevant facts, and because it refused to pay him even though it knew he was experiencing financial hardship.  As addressed above, Plaintiff's negligent investigation claim is negated by his failure to demonstrate that a proper investigation would have uncovered facts showing Safeco's coverage defenses to be meritless.  *See Broussard*, 523 F.3d at 630; *Sobley*, 302 F.3d at 342; *see also Liberty Mut. Ins. Co. v. McKneely*, 862 So. 2d 530, 534 (¶ 12) (Miss. 2003) ("[T]he plaintiff's burden in proving a claim for bad faith refusal goes beyond proving mere negligence in performing the investigation.").  Furthermore, no evidence has been presented of Safeco attempting to leverage Plaintiff's financial hardship "into a cheap settlement."  *Windmon*, 926 So. 2d at 874 (¶ 29) (rejecting bad faith claim and distinguishing prior action where the insurer attempted to force settlement by

withholding payment).

An insurer is not guilty of bad faith simply because it refuses to pay a claim under a policy; substantial evidence of the insurer's deliberate refusal "'to pay in the face of knowledge that it could not reasonably expect to succeed on any claimed defense'" must be presented.  *Sobley*, 302 F.3d at 340 (quoting *Grimes*, 722 So. 2d at 642).  The proceedings in this case show some delay in the investigation of a fire loss claim and an insurer's refusal to pay a claim pursuant to valid provisions of an insurance contract. This record fails to evidence the malice, gross negligence or reckless disregard necessary to support an award of punitive damages under Mississippi law.  Therefore, summary judgment will be granted in favor of Safeco on Plaintiff's bad faith denial of coverage and interdependent causes of action.

## II.  Plaintiff's Motion to Strike Experts [126]

Russ contends that four of Safeco's designated experts should be stricken under Rule 702 of the Federal Rules of Evidence and the standards set forth by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).  Rule 702 provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

**(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

**(b)** the testimony is based on sufficient facts or data;

**(c)** the testimony is the product of reliable principles and methods; and

**(d)** the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  In *Daubert*, the Supreme Court held that Rule "702 imposes a special obligation upon a trial judge to 'ensure that any and all scientific testimony . . . is not only relevant, but reliable.'"  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999) (quoting *Daubert*, 509 U.S. at 589).  In *Kumho Tire*, the Supreme Court held that the trial court's "gatekeeping obligation" applies to all expert testimony, and not only to scientific testimony.  526 U.S. at 147.  Rule 702's "relevance prong requires the proponent to demonstrate that the expert's 'reasoning or methodology can be properly applied to the facts at issue.'"  *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)).  In order to be reliable under Rule 702, the expert opinion must "be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief."  *Id.* (citations omitted).

Daubert set forth several factors that might "bear on" the admissibility of expert testimony, including, but not limited to:  whether the expert's theory or technique can be tested, whether the theory or technique has been published or subjected to peer review, and the general acceptance of the theory or method in the applicable community.  509 U.S. at 593-94.  The Supreme Court later recognized that *Daubert*'s factors "may or may not be pertinent in assessing reliability," since the specific issue, the subject of the expert's testimony and the expert's area of expertise will vary from case to case. *Kumho Tire*, 526 U.S. at 150.  Nonetheless, "a trial court should consider the specific factors identified in *Daubert* where they are reasonable measures of the reliability of expert testimony."  *Kumho Tire*, 526 U.S. at 152.

-33-

This Court's responsibility "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* However, the Court's role as gatekeeper is not meant to supplant the adversary system since "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citation omitted). "'The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable.'" *Johnson*, 685 F.3d at 459 (quoting *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998)). Rule "704 abolishes the per se rule against testimony regarding ultimate issues of fact." *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 239 (5th Cir. 1983) (citations omitted). However, nothing in the Rule permits an expert witness to express legal conclusions or to tell a jury what result it should reach. *Id.* at 240.

### A.    Mr. Van E. Hedges

Mr. Hedges has been a licensed insurance agent since 1972; is the President of Southern Insurance Consulting; and, has been an Adjunct Professor of Insurance at the University of Mississippi since 2000. Mr. Hedges was designated by Safeco to provide testimony regarding insurance industry customs, standards, and practices, and regarding Plaintiff's allegations that Safeco improperly adjusted and failed to pay his claim. The following are Mr. Hedges's challenged opinions and the Court's determination as to whether or not the opinions will be allowed:

1.      **It is undisputed that there were many delays in scheduling Russ' EUO. However, it appears that much of the delay was caused by Russ' first attorney, Howard.  Regardless, Safeco was still making a good faith effort to obtain the EUO when Russ filed suit.  The filing of this action against Safeco before Russ submitted to an EUO placed Russ in violation of the Policy Conditions and would give Safeco the right to void coverage.**

Starting with the last sentence, the Court finds this opinion to constitute an impermissible legal conclusion.  *See Snap-Drape, Inc. v. Comm'r*, 98 F.3d 194, 198 (5th Cir. 1996) (providing that Rule 704 does not permit an expert to offer a conclusion of law); *STMicroelectronics, Inc. v. SanDisk Corp.*, No. 4:05cv45, 2007 WL 4532662, at *1 (E.D. Tex. Jan. 24, 2007) ("As a general rule, contract interpretation is a legal question for the Court to decide.  An expert witness may not provide legal conclusions.").  No "scientific, technical, or other specialized knowledge" is necessary  for the jury to consider the circumstances referenced in the first three above-quoted sentences.  Fed. R. Evid. 702(a).  The jury can assess the existence of, and reasons for any delays in Safeco taking Plaintiff's EUO based on its own common knowledge and experience.  *See Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990) (holding that expert testimony was unnecessary where the jury could adeptly assess the "situation using only their common experience and knowledge").  Therefore, Mr. Hedges will not be permitted to offer any portion of his first challenged opinion at trial.

2.      **Russ takes the position that the recorded statements he gave to Safeco's adjustors were EUO's.  It is clearly understood within the insurance industry in Mississippi that this is not the case.**

The Court finds that the jury can readily resolve the fact issue of whether or not Russ was sworn in prior to any recorded statement being taken without the aid of expert testimony.  Thus, this opinion will be excluded.  *See United States v. Christian*, 673 F.3d

702, 710 (7th Cir. 2012) ("Expert testimony must be helpful to the jury to be admissible.") (citing *United States v. Winbush*, 580 F.3d 503, 510-11 (7th Cir. 2009)).

3.    **It has been my experience from forty years in insurance that the involvement of an attorney by an insured complicates the claims process and can greatly lengthen the period of time required to properly adjust the claim.**

      The length of time necessary for Safeco to adjust Plaintiff's claim is no longer a relevant issue given the Court's grant of summary judgment in favor of Safeco on Plaintiff's claims of and for negligence, gross negligence, breach of the duty of good faith and fair dealing, bad faith failure to adjust and pay insurance claim, tortious breach of contract, and punitive damages.  Consequently, there is no need for Mr. Hedges to opine on this issue.

4.    **The record is clear that Russ was living with his girlfriend in Waynesboro at the time of loss and that his father was to move into the house on April 1, 2011.  Russ did not reside in the residence premises and therefore there can be no coverage for him under this [Coverage D - Additional Living Expense] Section [of the Policy].**

      Summary judgment has been granted in favor of Safeco on Plaintiff's claim for additional living expenses under the Policy.  Therefore, this opinion is no longer relevant and will be excluded at trial.

5.    **The Contents Inventory which Russ submitted to Safeco claim [sic] was for over $73,000 in replacement cost values.  This is for an individual who only six years previous had signed a Declaration Under Penalty of Perjury during one of his bankrupcies stating that the total value of all his contents type property was $530.  It is also immediately after his ex-wife had moved out, taking "anything she wanted".  The ex-wife has also given statements that many of the items on Russ's inventory were either not there or overvalued.  Because the concealment or fraud provision applies *at any time during the policy,* the filing of a fraudulent Contents Inventory during the claims process would be grounds for Safeco to void the Policy as to Contents.**

**Russ also made claim for the full amount of his ALE Coverage on his Proof of Loss and later he made a statement indicating that he was incurring additional expenses that is in conflict with the other testimony and record.**

The last paragraph and the first four sentences of the first paragraph single out certain non-technical facts and circumstances that tend to support Safeco's concealment-misrepresentation defense.  Expert testimony is unnecessary for the presentation of such matters to the jury.  *See Salem v. U.S. Lines Co.*, 370 U.S. 31, 35, 82 S. Ct. 1119, 8 L. Ed. 2d 313 (1962) ("[E]xpert testimony not only is unnecessary but indeed may properly be excluded . . . if all the primary facts can be accurately and intelligibly described to the jury, and if they, as men of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience, or observation in respect of the subject under investigation . . . .") (citation omitted).  The last sentence of the first paragraph is impermissible because it interprets a straightforward Policy provision,[14] and offers a legal conclusion based on the Policy provision.  Thus, Mr. Hedges will not be permitted to offer these opinions at trial.

6.   **There is strong indication that the fire at issue here was arson.  There is evidence that Russ may have had motive and the opportunity to burn the house.  It is clearly understood within the insurance industry in Mississippi that this would give Safeco the right to expand its investigation of the loss.**

The Court finds that this opinion is aimed at supporting the scope or adequacy of Safeco's fire loss investigation.  The summary judgment rulings outlined above have

---

[14] Numerous courts have held that "expert testimony is admissible only if the contract language is ambiguous or involves a specialized term of art, science or trade."  *Suzlon Wind Energy Corp. v. Shippers Stevedoring Co.*, 662 F. Supp. 2d 623, 668-69 (S.D. Tex. 2009) (listing cases).

negated the relevancy of these issues to further proceedings.  As a result, this opinion is

unnecessary and will not be allowed at trial.

7.    **If a reported loss is questionable, an insurance company has not only the right, but the responsibility to its policyholders, its stockholders and to society in general, to fully investigate the claim. Their failure to do so would endanger the principal of indemnity and greatly increase the cost of insurance to all.**

This opinion will be excluded on the same basis that the jury will not be permitted

to consider the preceding opinion.

8.    **EFI Global's Fire Investigation Addendum dated April 25, 2012, states: "the evidence suggested that human involvement was the most probable cause of the fire" and that "an open flame was introduced to readily available combustibles, and was either consumed in the fire were [sic] carried away from the scene".  Based upon this determination of the origin of the fire, Russ' poor financial situation, his past loss history, the conflicting testimony as to where Russ was when on the afternoon of the fire, Russ' own conflicting statements and his questionable Inventory List, it is my opinion that Safeco has reasonable basis to consider denial of Russ' claim under this [Intentional Loss] Exclusion.**

**There would also be considerable moral risk at issue here, because the amount of coverage on the dwelling was over twice the market value of the house, excluding the five acres of land.**

The opinion expressed in the first paragraph is an impermissible legal conclusion

and will not be allowed at trial.  *Cf. Marmillion v. Am. Int'l Ins. Co.*, No. 1:07CV1132,

2008 WL 4514375, at *6 n.19 (S.D. Miss. Oct. 1, 2008) (excluding an expert witness's

legal conclusion that the insurer lacked an arguable basis for denying the claim); *Young*

*v. State Farm Mut. Auto. Ins. Co.*, No. 2:97cv24, 1999 WL 33537177, *2 (N.D. Miss.

Feb. 16, 1999) (same).  The opinion expressed in the second paragraph will be allowed.

-38-

Moral risk, more commonly referred to as "moral hazard," is the "risk that an insured will destroy property or allow it to be destroyed (usu. by burning) in order to collect the insurance proceeds." *Black's Law Dictionary* 723 (7th ed. 1999).  Moral hazard is at issue in this case pursuant to Safeco's "civil arson" defense.  "[M]otive on the part of the insured to destroy the property" is the second required element under this defense.  *Allstate Ins. Co. v. McGory*, 697 So. 2d 1171, 1174 (¶ 11) (Miss. 1997) (citation omitted).

The concept of moral hazard in the insurance industry is sufficiently technical and specialized that expert testimony will assist the trier of fact in understanding the issue and related evidence.  *See Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 611 (5th Cir. 2000) (recognizing "that a trial court's reliance on individuals experienced in a particular field for purposes of obtaining explanation of the technical meaning of terms used in the industry is 'prudent'"); *Fair Housing Opportunities of Nw. Ohio v. Am. Fam. Mut. Ins. Co.*, 684 F. Supp. 2d 964, 970-72 (N.D. Ohio  2010) (extensively referencing expert testimony as to the "moral hazard" concept).  Mr. Hedges's "moral risk" opinion is not impermissible so long as he keeps from opining as to the Plaintiff's subjective intent or telling the jury that moral risk gave the Plaintiff motive to set fire to his house.  *See Old Line Life Ins. Co. v. Brooks*, No. 3:05cv722, 2007 WL 892448, at *8-9 (S.D. Miss. Mar. 22, 2007) (striking expert opinions).

Plaintiff's bases for excluding Mr. Hedges's moral risk opinion are not convincing. This opinion is offered in support of Safeco's civil arson defense, not to fix damages at the market value of the Covered Property.  Thus, the opinion does not run afoul of Mississippi's "valued policy" statute, which sets the measure of damages for a total fire

loss at "the amount for which the buildings and structures were insured."  Miss. Code Ann. § 83-13-5.  Plaintiff's contention that the opinion conflicts with Safeco's own claim file goes to "the weight of the testimony, not its admissibility."  *United States v. Valencia*, 600 F.3d 389, 429 (5th Cir. 2010).  Any conflict between Mr. Hedges's moral risk opinion and Safeco's underwriting analysis may be brought out at trial.

In summary, all of Mr. Hedges's challenged opinions, except for his opinion regarding moral risk, will be excluded at trial.


### B.    Roy Smith, Esq.

Mr. Smith is an attorney who was originally retained by Safeco to take Plaintiff's EUO.  It appears that Mr. Smith's representation of Safeco in this matter ended once suit was filed.  Mr. Smith was designated by Safeco as a fact witness who may offer expert opinions.

Safeco indicates that Mr. Smith may offer opinions as an attorney to the effect that his actions, work, and conduct on Plaintiff's fire loss claim were reasonable, complied with the Mississippi Rules of Professional Conduct ("MRPC"), and met the "standard of care of attorneys requesting and performing examinations under oath of insurance claimants on behalf of insurance companies in Mississippi."  (Doc. No. [54-1] at p. 3.)  Plaintiff seeks the exclusion of Mr. Smith's purported expert testimony on relevance grounds.  According to the Plaintiff, there is no claim pending in this action regarding Mr. Smith's compliance with the MRPC or conformance with any standard of conduct.  Plaintiff also asserts that the issue of when he submitted to an EUO is moot given the Court's prior rulings.

-40-

In considering the parties' competing positions, the Court finds that Safeco has failed to demonstrate that any potential expert testimony from Mr. Smith is relevant to the issues remaining in this case.  *See Johnson*, 685 F.3d at 459 (describing the proponent's burden under Rule 702's relevance prong).  Therefore, such testimony will not be permitted at trial.

### C.    Ms. Annette Herrin

Ms. Herrin is licensed as a certified public accountant in Mississippi, and is also a certified valuation analyst and certified fraud examiner.  She has been retained by Safeco to render opinions relating to the Plaintiff's financial status.  The following are Ms. Herrin's opinions challenged by the Plaintiff:

> Based on the information provided, it is my opinion that Mr. Russ had financial distress at the time of the fire.  Based on my understanding of the insurance coverage, the facts of the case, and Mr. Russ's financial condition at the time of the fire, it is my opinion that Mr. Russ stood to gain financially from the destruction of the home.  Additionally, reviewing Mr. Russ's initial statements and his testimony in his EUO, as an accountant Certified in Financial Forensics and Certified Fraud Examiner, I find the inconsistent statements misleading, and certain statements made by Mr. Russ are concerning and could be considered indicators of financial fraud.

(Doc. No. [54-5] at p. 3.)

Plaintiff first argues that Ms. Herrin's opinions regarding his financial condition are aimed at proving the second "motive" element of civil arson and that the opinions are irrelevant because Safeco cannot prove by clear and convincing evidence the first "incendiary fire" element of the defense.  Whether or not sufficient evidence exists for the jury to consider Safeco's civil arson defense will be addressed in the Court's

-41-

subsequent ruling on Plaintiff's Motion for Partial Summary Judgment [127].  For purposes of ruling on the Motion to Strike Experts [126], however, the Court finds that Plaintiff's financial condition is clearly germane to Safeco's concealment-misrepresentation defense and to the motive element of civil arson.  Consequently, Ms. Herrin's opinions will not be stricken as irrelevant.

Plaintiff further contends that Ms. Herrin's opinions would not assist the trier of fact because she takes basic facts from account balances and expenses and makes unjustified assumptions and conclusions based on those facts.  The Court, for the most part, disagrees.  The jury in this case should benefit from hearing Ms. Herrin's testimony regarding Plaintiff's financial condition given her specialized knowledge in accounting and finance and her review of numerous technical documents, such as Plaintiff's bank records, tax returns, bankruptcy filings, and mortgage papers.  The absence of any "complex calculations" underlying Ms. Herrin's opinions does not negate her assistance to the jury in this regard.  (Pl.'s Mem. in Supp. of Mot. to Strike [128] at p. 16.)  "[A]n expert can be employed if his testimony will be helpful to the trier of fact in understanding evidence that is simply difficult, [though] not beyond ordinary understanding."  *Total Control, Inc. v. Danaher Corp.*, 338 F. Supp. 2d 566, 569 (E.D. Pa. 2004) (rejecting the argument that a financial analyst's testimony should be excluded because his damage calculations were based on simple arithmetic; and, finding that the expert's "ability to present a vast quantity of calculations derived from disparate sources in an understandable format will assist the jury") (citation omitted).

Ms. Herrin may also opine as to any inconsistencies between Plaintiff's financial record and his statements and representations without invading the province of the jury.

-42-

Such testimony may "embrace[] an ultimate issue", Fed. R. Evid. 704(a), but it would not

constitute an improper legal conclusion or speculation as to Plaintiff's subjective intent.

*See Brooks*, 2007 WL 892448, at *8-9 .  Nonetheless, Ms. Herrin will not be permitted to

testify that the Plaintiff engaged in fraud or misled Safeco, or that any of his

representations to Safeco were "misleading," as those issues are for the jury to

determine upon Safeco's concealment-misrepresentation defense.

The Court finds that Plaintiff's remaining objections are aimed at the weight of

Ms. Herrin's testimony, which he may attack at trial.  *See Valencia*, 600 F.3d at 429.

Therefore, Plaintiff's request for exclusion as to Ms. Herrin will be mostly denied.

### D.    Mr. Eric Smith

Mr. Smith is a fire investigator retained by Safeco to conduct an origin and cause

investigation regarding the subject fire.  Mr. Smith commenced his investigation on

March 24, 2011, and submitted a Fire Investigation Report [54-6] on April 7, 2011,

containing the following pertinent findings:

**DETERMINATION**

Fire pattern analysis, discovery witness testimony and electrical arc mapping
of the structure's wiring, indicate that the fire originated in the dining area of
the home. The examination of all potential accidental ignition sources failed
to show the fire resulted from accidental causes, however in keeping with the
new standard of fire classifications found in the 2011 edition of NFPA 921,
18.6.5 & 18.6.5.1, the cause of the fire is classified undetermined at this time.

(Fire Invest. Rep. [54-6] at pp. 5-6.)  On April 24, 2012, approximately one year later,

Mr. Smith received instructions from Safeco's legal counsel "to provide an updated

origin and cause determination . . . ."  (Fire Invest. Add. [54-7] at p. 2.)  This resulted in

a Fire Investigation Addendum [54-7], dated April 25, 2012, containing the following

findings:

**DETERMINATION**

[1]  The area of origin was determined to be the kitchen/dining room of the home.  Upon completing the inspection of the area to identify possible sources of ignition, three hypotheses were formed.

[2]  Hypothesis number one considered a failure of the wiring common to the home in the area of origin.

[3]  Hypothesis number two considered a failure at the air conditioner, mounted in the north wall of the dining area.

[4]  Hypothesis number three considered the possibility of human involvement.

[5] Hypotheses one and two were eliminated following an electrical inspection of the home's wiring and the air conditioner on April 4, 2011 by Electrical Engineer Phillip Price.

[6]  Hypothesis number three was the only one of the three to stand the scrutiny of logical reasoning.  The evidence suggested that human involvement was the most probable cause of the fire.

[7]  The elimination of the wiring and the air conditioner left no other heat producing risk in the area of origin to be considered a competent source of ignition, nor was there the discovery of any self heating combustibles, such as stains that contained linseed oils.

[8]  The evidence suggests that an open flame was introduced to readily available combustibles, and was either consumed in the fire or carried away from the scene.

(Fire Invest. Add. [54-7] at p. 2.)

Plaintiff seeks exclusion of the opinions stated in the Fire Investigation

Addendum (the "Addendum") primarily on the basis that they contradict the initial Fire

Investigation Report (the "First Report") and the National Fire Protection Association

("NFPA") guidelines on which the First Report relies.  Plaintiff asserts that this

contradiction renders the Addendum unreliable under *Daubert*.  The Court finds

-44-

Plaintiff's request for exclusion well taken only with respect to Addendum opinion numbers six (6) and eight (8).

"The NFPA is a nonprofit organization dedicated to fire prevention, and NFPA 921 is a document intended to 'establish guidelines and recommendations for the safe and systematic investigation or analysis of fire and explosion incidents.'" *Russell v. Whirlpool Corp.*, 702 F.3d 450, 454 (8th Cir. 2012) (quoting NFPA 921 § 1.2.1). Numerous courts have found NFPA 921 to be an acceptable guide for fire investigation methodology. *See, e.g.*, *id.* at 455; *Schlesinger v. United States*, — F. Supp. 2d —, 2012 WL 407098, at *15 (E.D.N.Y. 2012); *Butcher v. Allstate Ins. Co.*, No. 1:06cv423, 2009 WL 301822, at *3 (S.D. Miss. Feb. 5, 2009). Moreover, courts often exclude expert testimony that fails to comport with NFPA 921 standards when an expert explicitly references the guide in reaching his conclusions. *See, e.g.*, *Russell*, 702 F.3d at 455; *Schlesinger*, 2012 WL 407098, at *15. However, an expert's reliance on a methodology other than NFPA 921 does not render his opinions per se unreliable. *See Schlesinger*, 2012 WL 407098, at *15 (citing cases).

The First Report clearly relies on the "new standard of fire classifications found in the 2011 edition of NFPA 921 . . . ." (Fire Invest. Rep. [54-6] at p. 6.) Furthermore, Safeco accepts that NFPA 921 precludes Mr. Smith from testifying that the subject fire was incendiary. (*See* Safeco's Resp. to Mot. to Strike [150] at p. 5.) Consequently, the reliability of the opinions stated in the Addendum chiefly turns on the standards referenced in NFPA 921. *See Russell*, 702 F.3d at 455 (providing that "an expert who purports to follow NFPA 921 must apply its contents reliably").

In 1992, negative corpus–the process typically used to deem a fire incendiary by ruling out the possibility of any accidental cause–was incorporated into NFPA 921. *See Somnis v. Country Mut. Ins. Co.*, 840 F. Supp. 2d 1166, 1172 n.2 (D. Minn. 2012). In 2011, however, the NFPA rejected the use of negative corpus, finding that:

> This process is not consistent with the Scientific Method, is inappropriate, and should not be used because it generates un-testable hypotheses, and may result in incorrect determinations of the ignition source and first fuel ignited. Any hypothesis formulated for the causal factors (e.g., first fuel, ignition source, and ignition sequence), must be based on facts. Those facts are derived from evidence, observations, calculations, experiments, and the laws of science. Speculative information cannot be included in the analysis.

NFPA 921 § 18.6.5 (2011 ed.).[15] The 2011 edition of NFPA 921 also provides that:

> In the circumstance where all hypothesized fire causes have been eliminated and the investigator is left with no hypothesis that is evidenced by the facts of the investigation, the only choice for the investigator is to opine that the fire cause, or specific causal factors, remains undetermined. It is improper to base hypotheses on the absence of any supportive evidence. . . . That is, it is improper to opine a specific ignition source that has no evidence to support it even though all other hypothesized sources were eliminated.

NFPA 921 § 18.6.5.1 (2011 ed.). Sections 18.6.5 and 18.6.5.1 of NFPA 921 are specifically referenced in Mr. Smith's First Report [54-6].

The Court determines that Addendum opinion numbers 6 and 8 directly conflict with NFPA 921 sections 18.6.5 and 18.6.5.1. In reviewing the Addendum, it is clear that Mr. Smith uses negative corpus to determine "that human involvement was the most probable cause of the fire", and "that an open flame was introduced to readily available combustibles, and was either consumed in the fire or carried away from the scene." (Addendum [54-7] at p. 2.) No foundational evidence or specific facts, such as eye witness testimony or the finding of an accelerant, are cited in support of these

---

[15] (*See* Doc. No. [128-2].)

conclusions.  Instead, Mr. Smith simply speculates that the fire was probably caused by human involvement due to the absence of supportive evidence for certain accidental causes.  Such speculative reasoning is deemed "inappropriate" and "improper" under sections 18.6.5 and 18.6.5.1.  There is also significant tension between Mr. Smith's "most probable cause of the fire" conclusion and NFPA 921 § 19.2.1.  That section provides in pertinent part:  "The cause of a fire may be classified as accidental, natural, incendiary, or undetermined. . . .  Fires in which the level of certainty is possible or suspected, or in which there is only suspicion of that cause, should be classified as undetermined."  NFPA 921 § 19.2.1 (2011 ed.).  Because Mr. Smith's fire investigation was guided by NFPA 921 and because no other accepted methodology is offered in support of his opinions, the conflict between the above-listed NFPA 921 sections and Addendum opinion numbers 6 and 8 renders those opinions unreliable.

The remaining Addendum opinions will not be excluded.  The Court has not been apprised of any NFPA 921 provision that precludes a fire investigator from formulating causal hypotheses and then eliminating hypotheses for which there is no evidentiary basis.  Notwithstanding NFPA 921, "[s]cientific methodology today is based on generating hypotheses and testing them to see if they can be falsified . . . ."  *Daubert*, 509 U.S. at 593 (citation omitted); *see also Schlesinger*, 2012 WL 407098, at *16 (finding a fire investigator's methodology, including his ruling out of certain causes, to be reliable); *Somnis*, 840 F. Supp. 2d at 1173 (holding that an expert could testify that his investigation failed to reveal any accidental causes for a fire, although he could not opine that the fire was incendiary).  Plaintiff's disagreement with Mr. Smith's remaining opinions can be addressed through "[v]igorous cross-examination, presentation of

contrary evidence, and careful instruction on the burden of proof . . . ."  *Daubert*, 509 U.S. at 596.

### E.   Summation

The Motion to Strike Experts [126] will be granted as follows:  Mr. Van E. Hedges's proposed testimony, except for his opinion regarding moral risk, will be excluded; no expert testimony will be heard from Roy Smith, Esq.; Ms. Annette Herrin will not be permitted to opine that the Plaintiff engaged in fraud or misled Safeco, or that any of his representations to Safeco were misleading; and opinion numbers 6 and 8 in Mr. Eric Smith's Addendum [54-7] will be excluded.  The motion will be denied in all other respects.

### III.   Plaintiff's Motion for Partial Summary Judgment [127]

Plaintiff seeks summary judgment as to Safeco's EUO and civil arson defenses to payment of Policy proceeds.  For the reasons stated below, summary judgment will be granted in favor of the Plaintiff only as to Safeco's EUO defense.

### A.   EUO Defense

Safeco's request for summary judgment as to its EUO defense has now been rejected two times.  Even considering the facts and resulting inferences in the light most favorable to Safeco as the nonmoving party, there is still no evidence of a "willful refusal to comply with the[ EUO] policy provision[] on the part of the insured."  *Mullen*, 98 So. 3d at 1089 (¶ 24); *see also Cain*, 2008 WL 2094235, at *2.  The "absence of [such] evidentiary support in the record for" Safeco's EUO defense requires that summary

judgment be granted in favor of Russ.  *Cuadra*, 626 F.3d at 812; *see also Brown*, 663 F.3d at 766 (providing that summary judgment is mandatory against a party bearing the burden of proof at trial that fails to establish an essential element of its case).[16]

### B.    Civil Arson Defense

Safeco's civil arson defense is based on the Policy provision excluding coverage for any loss caused by an intentional act of the insured.  (*See* Policy [124-1 at ECF p. 26].)  Even in the absence of such a provision, "'willful incendiarism by an insured is a defense to the insurer's liability.'"  *Allstate Ins. Co.*, 697 So. 2d at 1174 (¶ 10) (quoting *McGory v. Allstate Ins. Co.*, 527 So. 2d 632, 634 (Miss. 1988)).  An insurer must prove each of the following elements by clear and convincing evidence in order to defeat coverage under this defense:  "1) incendiary fire, 2) motive on the part of the insured to destroy the property, and 3) opportunity on the part of the insured to set the fire or to procure the setting of the fire by another."  *Id.* at 1174 (¶ 11).  "Because arson is rarely witnessed, an insurer may establish a defense of arson through circumstantial evidence . . . ."  *Guideone Mut. Ins. Co. v. Rock*, 1:06CV218, 2009 WL 1854452, at *6 (N.D. Miss. June 29, 2009) (citing *McGory*, 527 So. 2d at 634-35).

Plaintiff contests Safeco's ability to present sufficient evidence to create a jury issue as to the first, incendiary fire, element of the subject defense.  Plaintiff does not

---

[16] Safeco bears the burden of proof with respect to its EUO defense to payment of Policy proceeds whether it is viewed as an affirmative defense or counterclaim for declaratory relief since forfeiture of insurance coverage is the goal in either context. *See, e.g.*, *First Pentecostal Church of Jackson v. Bhd. Mut. Ins. Co.*, No. 3:09cv34, 2010 WL 2817071, at *5 (S.D. Miss. July 15, 2010); *Interstate Life & Accident Ins. Co. v. Smith*, 260 So. 2d 453, 455 (Miss 1972).

attempt to "demonstrate an absence of evidentiary support in the record" with respect to the elements of motive and opportunity. *Cuadra*, 626 F.3d at 812. Therefore, Safeco need only point out "specific facts showing that there is a genuine issue for trial" as to the incendiary nature of the fire in order to avoid summary judgment. *Cannata*, 700 F.3d at 172.

Plaintiff essentially argues that expert testimony classifying a fire as "incendiary"[17] is required for Safeco to meet its "clear and convincing" burden of proof and that no such testimony is available in this cause. Numerous courts have found sufficient evidence of the first element of arson upon a fire investigator's opinion that a blaze was incendiary in nature or deliberately set.[18] However, the Court is unaware of, and Plaintiff fails to cite any opinion holding that the absence of an explicit "incendiary" fire classification from an expert precludes a claim of civil arson from proceeding past the summary judgment stage. There is, in fact, persuasive reasoning to the contrary.[19]

---

[17] "The incendiary fire is one intentionally ignited under circumstances in which the person knows that the fire should not be ignited." *Guideone Ins. Co. v. Bridges*, No. 2:06cv229, 2008 WL 5532023, at *4 (S.D. Miss. Sept. 23, 2008) (citing NFPA guidelines).

[18] *See, e.g.*, *Cora Pub, Inc. v. Cont'l Cas. Co.*, 619 F.2d 482, 485 (5th Cir. 1980); *Guideone Mut. Ins. Co. v. Hall*, 1:06CV315, 2009 WL 198304, at *2 (N.D. Miss. Jan. 26, 2009); *McGory*, 527 So. 2d at 636.

[19] *See Schlesinger*, 2012 WL 407098, at *15 ("'[T]he absence of an accidental explanation for a fire frequently has been cited as a sufficient basis for a finding of arson.'") (quoting *Somnis*, 840 F. Supp. 2d at 1171 (finding that a jury may reasonably infer the existence of arson from an investigator ruling out all accidental causes for a fire)); *Guideone Ins. Co. v. Bridges*, No. 2:06cv229, 2008 WL 4307483, at *6-7 (S.D. Miss. Sept. 16, 2008) (holding that sufficient evidence existed for the insurer to avoid summary judgment even though its expert offered nebulous conclusions regarding the nature of a fire, such as "undetermined" and involving "human intervention").

The Court therefore rejects Plaintiff's unsupported contention that summary judgment is due solely because no expert has classified the subject fire as "incendiary."

The Court further finds that Plaintiff places too much stock in Safeco's "clear and convincing" burden of proof, while overlooking the fact that arson may be proven "circumstantially." *McGory*, 527 So. 2d at 634. "[C]ircumstantial evidence is evidence that, without going directly to prove the existence of a fact, gives rise to a logical inference that such fact does exist." *States v. State*, 88 So. 3d 749, 756 (¶ 27) (Miss. 2012) (citation and internal quotation marks omitted). Even in criminal cases, where the burden of proof is beyond a reasonable doubt, a conviction may be obtained on the basis of circumstantial evidence alone. *Bostic v. State*, 531 So. 2d 1210, 1215 (Miss. 1988) (citations omitted).

There are numerous circumstances at issue in this case that, taken as a whole, could lead to the logical inference that the subject fire was of an incendiary, i.e., intentional or not accidental, nature. Safeco's fire investigation expert has eliminated "all potential accidental ignition sources" as possible causes for the fire. (Fire Invest. Rep. [54-6] at p. 6.) Plaintiff's fire investigation expert, George Edward Morgan, has testified at deposition that "I think someone could have set the fire. Now, whether it was Mr. Russ or not, I have no information regarding that." (Morgan Dep. [150-1] 89:22-24.) Mr. Morgan did not reach a definitive conclusion as to the cause of the fire, but he was unable to rule out the possibility of someone intentionally starting it. (Morgan Dep. [150-1] 18:16-23.) Further, Mr. Morgan did not disagree with the report of an electrician that eliminated any electrical activity as the cause of the fire. (Morgan Dep. [150-1] 18:24-19:5.) It appears that someone intentionally starting the fire and careless smoking were

the only potential causes Mr. Morgan could not rule out, although the Plaintiff told him

that he did not smoke inside the house.  (Morgan Dep. [150-1] 65:13-66:2.)  During a

recorded statement taken on April 1, 2011, Plaintiff stated, "Originally I thought my ex-

wife may have broke in and set it on fire."[20]  (Doc. No. [124-6] at p. 22.)  Plaintiff also

testified at deposition on June 15, 2012, that he still thought his ex-wife may have set

the subject fire.  (Pl.'s Dep. [150-2] 85:2-6.)  Believing this evidence and drawing all

justifiable inferences in Safeco's favor,[21] the Court finds that a jury should ultimately

determine whether there is clear and convincing proof of an incendiary fire.  As a result,

Plaintiff's request for summary judgment on Safeco's civil arson defense will be denied.

## IV.    Plaintiff's Motion to Strike Discovery [129]

There are two discovery matters at issue in this motion.  First, Safeco's

designation of Mark Winstead, the 30(b)(6) designee of C-Spire Wireless a/k/a Cellular

South, Inc. ("C-Spire"), as an expert witness approximately two (2) months past

Defendant's expert witness designation deadline.  Second, Safeco's production of

supplemental interrogatory and request for production responses on the date of the

discovery deadline, July 2, 2012.

Safeco first asserts procedural arguments in opposition to the Motion to Strike

Discovery [129].  Safeco contends that the motion should be denied because it does not

conform with the requirements of Federal Rule of Civil Procedure 12(f) (motion to strike)

---

[20] The first element of civil arson, unlike the second and third elements, does not
contain an "on the part of the insured" component.  *Allstate Ins. Co.*, 697 So. 2d at 1174
(¶ 11).

[21] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed.
2d 202 (1986).

and because Plaintiff failed to present complete copies of the subject discovery documents to the Court.  Safeco's form over substance arguments are not well taken.  Notwithstanding the title of the motion, the relief requested by the Plaintiff falls within the confines of Federal Rule of Civil Procedure 37.  *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").  Further, the disputed discovery documents are now before the Court.  (*See* Doc. No. [148-1].)  Therefore, the Motion to Strike Discovery [129] will stand or fall on its merits, as opposed to its title or form.

### A.   Designation of Mark Winstead As an Expert Witness

Under Rule 26 of the Federal Rules of Civil Procedure, "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."  Fed. R. Civ. P. 26(a)(2)(A).  As to a retained expert witness, a party's disclosure must include a written report prepared by the witness containing, *inter alia*, "a complete statement of all opinions the witness will express and the basis and reasons for them; [and] the facts or data considered by the witness in forming them . . . ."  Fed. R. Civ. P. 26(a)(2)(B).  Generally, non-retained expert witnesses are not required to submit written reports.  As to these witnesses, a party's designation must include "a summary of the facts and opinions to which the witness is expected to testify."  Fed. R. Civ. P. 26(a)(2)(C).  Expert disclosures are to be made in the sequence ordered by the court and are to be supplemented in accordance with Rule 26(e).  *See* Fed. R. Civ. P. 26(a)(2)(D)-(E).  Under this Court's Local Uniform

Civil Rules, absent a finding of just cause, a party's failure to make full expert disclosures by its "expert designation deadline is grounds for prohibiting introduction of that evidence at trial." L.U.Civ.R. 26(a)(2). Further, discovery regarding experts must be completed by the discovery deadline and good cause must be shown for the designation of an expert subsequent to the deadline. L.U.Civ.R. 26(a)(2)(C).

Safeco's expert designation deadline was May 2, 2012. Mr. Winstead was identified as a potential expert witness in Safeco's July 2, 2012 Supplemental Designation of Experts [107-1]. The Supplemental Designation provides in pertinent part:

> Mr. Mark Winstead is designated as a potential expert out of an abundance of caution, given that the adverse party and/or Court may deem his testimony to be of an expert nature. Thus, Mr. Winstead is designated to testify in accordance with the testimony provided in the 30(b)(6) deposition of C-Spire Wireless, taken on June 26, 2012, and in accordance with the records provided by C-Spire Wireless in response to the subpoena issued in this cause by Defendant/Counter Plaintiff. Mr. Winstead has not been retained as an expert by Safeco, and will not be compensated for his testimony, except as required pursuant to the Federal Rules of Civil Procedure to secure his appearance as may be necessary pursuant to Rule 45.

(Safeco's Suppl. Desig. of Experts [107-1] at p. 2.) Plaintiff asserts that this designation is untimely and that it fails to disclose adequate information under the Federal Rules of Civil Procedure.

The Court finds that Safeco was not required to obtain a written expert report from Mr. Winstead. Mr. Winstead is employed by C-Spire, as opposed to Safeco, and Safeco has not retained him to provide expert testimony in this case. *See* Fed. R. Civ. P. 26(a)(2)(B). Furthermore, Mr. Winstead's deposition testimony provides adequate notice of the subject matter on which he is expected to testify at trial, as well as a

summary of related facts and opinions.  *See* Fed. R. Civ. P. 26(a)(2)(C).  Thus, the

salient issue is the timeliness of Safeco's disclosure of Mr. Winstead as a witness, and

not the content of the disclosure.

The Court is unconvinced that the expected testimony of Mr. Winstead

constitutes expert testimony necessitating his disclosure by Safeco's expert designation

deadline of May 2, 2012.  Numerous courts have found testimony regarding cell phone

records and the location of cell phone towers to fall outside the scope of expert witness

testimony.  *See, e.g.*, *United States v. Baker*, No. 10-4713, 2012 WL 4054773, at *3 n.1

(3d Cir. Sept. 17, 2012), *cert. denied*, 133 S. Ct. 992 (2013); *United States v. Feliciano*,

300 Fed. Appx. 795, 801 (11th Cir. 2008); *United States v. Henderson*, No. CR 10-117,

2011 WL 6016477, at *5 (N.D. Okla. Dec. 2, 2011); *Malone v. State*, 73 So. 3d 1197,

1201 (¶¶ 11-14) (Miss. Ct. App. 2011).  As noted by one district court:

> A reasonably competent layperson, given a small amount of information,
> could easily examine a cell-phone record and determine the identity of the
> cell tower that handled a particular call. That same layperson, given a map
> of cell towers in the area, could identify the approximate location of the cell
> phone at the time the call was made or received.

*Henderson*, 2011 WL 6016477, at *5; *accord Baker*, 2012 WL 4054773, at *3 n.1 ("Any

cell phone user of average intelligence would be able to understand that the strength of

one's cell phone reception depends largely on one's proximity to a cell phone tower.").

Pursuant to this reasoning, Mr. Winstead's expected testimony would fall under Federal

Rule of Evidence 701 (opinion testimony by lay witnesses) or Federal Rule of Evidence

803(6) (records of a regularly conducted activity).  *Cf. Malone*, 73 So. 3d at 1201 (¶ 13)

(finding Mr. Winstead's testimony to be admissible under corollary state rules of

evidence).  Viewed as a fact witness, Mr. Winstead would not be excluded on the basis

of untimely disclosure since counsel for both parties elicited his deposition testimony prior to the close of discovery. *Cf. Betts v. Gen. Motors Corp.*, No. 3:04cv169, 2008 WL 2789524, at *4 (N.D. Miss. July 16, 2008).

Assuming *arguendo* that Mr. Winstead would be called to provide expert testimony at trial, the Court will determine whether his testimony should be excluded as a discovery sanction under Rule 37. District courts possess broad, considerable discretion in discovery matters. *See Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 569 (5th Cir. 1996). That discretion, however, is to be guided by the following four factors in determining whether to exclude untimely expert witness testimony: "(1) the importance of the witness's testimony; (2) the prejudice to the opposing party of allowing the witness to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation, if any, for the party's failure to identify the witness." *Bradley v. United States*, 866 F.2d 120, 125 (5th Cir. 1989) (citing *Murphy v. Magnolia Elec. Power Ass'n*, 639 F.2d 232, 235 (5th Cir. 1981)).

Mr. Winstead's expected testimony is clearly important to Safeco's case. Safeco seeks to use the testimony to show that Plaintiff's cell phone records place him near the vicinity of the Covered Property at the time of the fire. This circumstance, if proven true, would support the third "opportunity" element of Safeco's civil arson defense. Safeco's concealment-misrepresentation defense is also based, in part, on the purported conflict between Plaintiff's representations and his cell phone records regarding his location at the time of the fire. Consequently, the first "importance" factor militates against the exclusion of Mr. Winstead's testimony.

As to the second "prejudice" factor, Plaintiff essentially had the same opportunity as Safeco to prepare for the C-Spire/Winstead deposition and to elicit testimony at the deposition.  Mr. Winstead did not meet or have any communications with Safeco's counsel prior to the deposition on June 26, 2012.  Plaintiff and Safeco both had the cell phone records from C-Spire prior to the deposition.  It should have come as no surprise to the Plaintiff that Safeco would ask Mr. Winstead questions at the June 26 deposition regarding cell phone location data given the Notice of Issuance of Subpoena Duces Tecum [52] and accompanying subpoena to C-Spire filed in this action on April 26, 2012.  In addition, Safeco's original interrogatory responses, served on June 20, 2012, identified "[u]nknown persons who may be designated from C-spire" as expert witnesses that it may call to "testify regarding cell phone activity and probable locations of users based on the records of the company as to cell phones being used by Chris McCreary and Jeff Russ on the day of the fire."  (Doc. No. [148-1 at ECF p. 12].)  Allowing Mr. Winstead to testify at trial in accordance with his deposition testimony would hardly amount to "trial by ambush" or result in "unfair surprise" to the Plaintiff given the preceding circumstances.  (Pl.'s Mem. Brief in Supp. of Mot. to Strike Disc. [130] at pp. 4, 5.)  Thus, this factor weighs in favor of allowing the testimony.

In the absence of any malady (prejudice), there is no need for a cure (continuance).  As a result, the third "continuance" factor fails to support exclusion.

The final "explanation" factor slightly supports Plaintiff's requested relief.  The Court finds reasonable Safeco's explanation that it could not designate Mr. Winstead as an expert witness on May 2, 2012, because it did not know at that time who C-Spire would designate as its Rule 30(b)(6) representative.  The Court also believes that the

record evidences diligent efforts on the part of Safeco to obtain Plaintiff's cell phone records, which it justifiably wanted prior to deposing C-Spire, and delay beyond Safeco's control in obtaining the cell phone records.  However, it is not evident to the Court why Safeco failed to include any potential or "unknown" 30(b)(6) C-Spire representatives in its original expert designation since it had the foresight to identify such persons as expert witnesses in its original interrogatory responses served prior to the C-Spire/Winstead deposition.

The balance of the preceding factors conclusively weighs in favor of Mr. Winstead testifying at trial in accordance with his deposition testimony.  For that reason and the others detailed above, this portion of the Motion to Strike Discovery [129] will be denied.

### B.    Safeco's Supplemental Discovery Responses

Plaintiff's request for a blanket order striking Safeco's supplemental interrogatory and request for production responses will be denied.  These discovery documents were served prior to the close of discovery, and within two (2) weeks of the production of Safeco's original discovery responses.  Thus, Safeco's supplementation was seasonable under Federal Rule of Civil Procedure 26(e).

However, Plaintiff's motion will be granted with respect to any documents identified for the first time in Safeco's supplemental request for production responses that were not actually produced with the discovery responses.  Safeco's Supplemental Response to Request for Production No. 10 states in pertinent part:

> Safeco has obtained the contents of a hard drive from Kelly Russ, which is believed to have photos and other evidence which may be relevant to the claims of the Plaintiff and defenses of Safeco.  This electronic data will be

made available for inspection and/or copying at a mutually agreed time between the parties.

(Doc. No. [148-1 at ECF p. 39].)  July 2, 2012, was the last day for the parties to exchange discovery in this case, not the date by which the parties merely had to identify documents or data that would be made available for inspection at a later time.  Safeco has offered no justification for failing to produce the contents of the hard drive from Kelly Russ within the discovery period.  Accordingly, Safeco will be precluded from using as evidence at trial, except possibly for impeachment purposes, the documents or data contained on the hard drive.  *Cf. Brooks v. Stringer*, No. 2:04CV120, 2007 WL 43819, at *3 (S.D. Miss. Jan. 5, 2007) (striking untimely documents).

## V.    Safeco's Motion to Determine Order of Proof at Trial [132]

Safeco asserts that "as the declaratory judgment counter-plaintiff, [it] should be permitted to proceed first and last at trial."  (Safeco's Mot. to Det. Order of Proof at Trial [132] at ¶ 6.)  Trial courts possess considerable discretion in determining the order of proof at trial.  *See, e.g.*, *Huddleston v. United States*, 485 U.S. 681, 690, 108 S. Ct. 1496, 99 L. Ed. 2d 771 (1988); *Martin v. Am. Petrofina, Inc.*, 779 F.2d 250, 253 (5th Cir. 1985).  This Court will exercise its discretion to allow Russ, as the party that initiated this action, to proceed first.  Therefore, this motion will be denied.

## <u>CONCLUSION</u>

For the foregoing reasons,

IT IS ORDERED AND ADJUDGED that Safeco's Motion for Summary Judgment [124] is granted in part and denied in part.  Summary judgment is granted in favor of Safeco as to Plaintiff's claims of and for additional living expenses under the Policy,

tortious interference with contractual relations and with business relations, negligence, gross negligence, breach of the duty of good faith and fair dealing, bad faith failure to adjust and pay insurance claim, tortious breach of contract, and punitive damages.  The motion is denied in all other respects.

IT IS FURTHER ORDERED AND ADJUDGED that Plaintiff's Motion to Strike Experts [126] is granted in part and denied in part, as outlined above.

IT IS FURTHER ORDERED AND ADJUDGED that Plaintiff's Motion for Partial Summary Judgment [127] is granted in part and denied in part.  Summary judgment is granted in favor of the Plaintiff only with respect to Safeco's coverage defense based on the Plaintiff filing suit before submitting to an examination under oath.

IT IS FURTHER ORDERED AND ADJUDGED that Plaintiff's Motion to Strike Discovery [129] is granted in part and denied in part.  Safeco will be precluded from utilizing as evidence at trial, except possibly for impeachment purposes, any document or data contained on Kelly Russ's hard drive that it failed to produce to the Plaintiff prior to the expiration of the July 2, 2012, discovery deadline.  The motion is denied in all other respects.

IT IS FURTHER ORDERED AND ADJUDGED that Safeco's Motion to Determine Order of Proof at Trial [132] is denied.

SO ORDERED AND ADJUDGED this the 26th day of March, 2013.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE